NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 22 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| STEVENSON FISHER, | No. 19-15471 |
| Plaintiff-Appellant, | |
| v. | D.C. No. 2:15-cv-00358-RFB-NJK |
| LE VIAN CORP., | MEMORANDUM[*] |
| Defendant-Appellee, | |
| and | |
| MJ CHRISTENSEN JEWELERS, LLC, | |
| Defendant. | |

Appeal from the United States District Court
for the District of Nevada
Richard F. Boulware II, District Judge, Presiding

Submitted July 8, 2020[**]
Seattle, Washington

Before: FERNANDEZ and NGUYEN, Circuit Judges, and BOLTON,[***] District

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]     The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

Judge.

Stevenson Fisher appeals the district court's summary judgment in favor of Le Vian Corp. on Fisher's claims for violations of the Telephone Consumer Protection Act ("TCPA") and the Nevada Deceptive Trade Practices Act ("NDTPA"), for declaratory relief, and for attorneys' fees. Fisher argues that the district court erred in granting summary judgment because there exist genuine issues of material fact as to whether MJ Christensen Jewelers, LLC ("MJC") had actual authority to act on behalf of Le Vian, whether Le Vian was vicariously liable as an employer of MJC, and whether Le Vian ratified MJC's acts. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Although the TCPA is "silent as to vicarious liability," a "defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877, 879 (9th Cir. 2014); *see Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018). "Whether an agency relationship exists is for a court to decide based on an assessment of the facts of the relationship." *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019).

1. MJC did not possess actual authority to act on behalf of Le Vian. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047 (9th Cir. 2009) (explaining we

review de novo a district court's summary judgment and may affirm on any basis supported by the record). Fisher argues that Le Vian exerted such control over MJC that MJC became Le Vian's agent. But control alone does not establish an agency relationship; an agent must "act[] on behalf of [the principal] with power to affect the legal rights and duties of the [principal]." Restatement (Third) of Agency § 1.01 cmt. c. And no evidence suggests that MJC had the power to affect Le Vian's legal rights and duties with respect to the robocall. At most, MJC's contract with LX Publications, LLC had economic[1] consequences for Le Vian. Thus, Fisher has raised no genuine issue of material fact as to the existence of an agency relationship between Le Vian and MJC.

Even accepting Fisher's premise that a sufficiently high level of control can create an agency relationship, the undisputed facts here do not establish such control. The control inherent in a manufacturer-retailer relationship generally does not give rise to an agency relationship. Restatement (Third) of Agency § 1.01 cmt. g ("A purchaser who resells goods supplied by another is acting as a principal, not an agent."); *see also Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) ("Generally, retailers are not considered the agents of the manufacturers whose products they sell.").

---

[1] If the robocalls were persuasive, MJC might have increased sales at the trunk show, which in turn presumably would have increased Le Vian's profits.

And the constraints imposed by Le Vian with respect to the trunk show did not establish sufficient control because Le Vian did not retain authority to give "interim instructions" to MJC. *See* Restatement (Third) of Agency § 1.01 cmt. f. (explaining that the existence of "constraints on the service provider does not mean that the service recipient has an interim right to give instructions"). The Event Marketing Guide advertised a "menu of marketing tools [that LX] offer[ed]," including robocalls; it did not require robocalls. The Retailer Handbook provided that "[a]ll marketing and presentation of Le[] Vian's brands . . . by Authorized Retailer must be approved by Le Vian in writing prior to use and/or dissemination." But Le Vian's control was limited to final approval before use or dissemination. And the Training Manual, which generically stated that MJC's "[m]anagers and associates . . . [were] held accountable for the success of" the trunk show, did not establish a high level of control.

Although Le Vian recommended that MJC use robocalls, and perhaps pressured it to do so, it is unreasonable to conclude that Le Vian exerted such control that it compelled MJC. It is undisputed that (1) Le Vian's express preference was for MJC to personally call customers rather than to use robocalls and (2) LX (purportedly acting at the behest of Le Vian) characterized the robocalls as "optional" on at least two occasions.

Fisher's alternative argument that Le Vian and MJC were engaged in a joint

4

venture lacks merit. There was no "single" venture for "joint" profit; no "community of interest" or a reciprocal agency relationship; and no "equal right to control" or "mutual control . . . over the property engaged." 12 Am. Jur. Proof of Facts 2d 295 I § 1 (1977); *Shell Oil Co. v. Prestidge*, 249 F.2d 413, 415 (9th Cir. 1957). Nor did Le Vian and MJC form a legal partnership. *See* Restatement (Second) of Agency § 14A; *Blankenship v. Hearst Corp.*, 519 F.2d 418, 425 (9th Cir. 1975).

2. Le Vian was not vicariously liable for MJC's acts as MJC's employer. The district court engaged in our ten-factor test to evaluate whether a party "may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee," *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018), and ultimately concluded that Le Vian could not be held vicariously liable as MJC's employer.

We agree. The "control" factor is the "essential ingredient," *id.*, and here it does not tend to establish employment. Further, Le Vian and MJC engaged in different businesses; Le Vian did not supervise MJC's work or supply equipment to MJC; there is no evidence of any term of employment; payments flowed from MJC to Le Vian; and there is no evidence that either Le Vian or MJC intended to enter into an employment relationship.

5

3.   Le Vian did not ratify the acts of MJC.  Ratification is possible only if "the act is ratifiable as stated in [Restatement (Third) of Agency] § 4.03," *Kristensen*, 879 F.3d at 1014 (quoting Restatement (Third) of Agency §4.01(3)(a)), which provides that "[a] person may ratify an act [only] if the actor acted or purported to act as an agent on the person's behalf," Restatement (Third) of Agency § 4.03.  Here, there is no evidence suggesting that MJC purported to act as Le Vian's agent in contracting with LX to place the robocall.[2]

Even assuming the act was ratifiable, Le Vian did not ratify it.  A Le Vian sales representative's statement that the lawsuit "sound[ed] like a Le Vian problem" does not constitute ratification of the particular act at issue.  *See* Restatement (Third) of Agency § 4.01(2)(a).  Nor does the allegation that Le Vian "reaped the benefits" of the trunk show constitute "*conduct* that justifies a reasonable assumption that [Le Vian] . . . consent[ed]" to an act by MJC that would affect its legal relations.  Restatement (Third) of Agency § 4.01(2)(b) (emphasis added).

**AFFIRMED.**

---

[2] That MJC's owner (who recorded the robocall) mentioned Le Vian in the robocall does not suggest otherwise.

6